Next case is number 06-3053, Paul G. Cavicchia against the Department of Homeland Security. Mr. Roth. Thank you very much, Your Honor. May it please the Court. Your Honor, I think this is a case where the facts are undisputed, and I don't think anyone will dispute that. As a matter of fact, based on what had happened, or did not happen in discovery in the case, and based on the fact that my opposition to the ultimate removal of Mr. Cavicchia from the United States Secret Service was based on a due process issue and, quite frankly, nothing else, I waived an evidentiary hearing and submitted the issue on the papers to the administrative logic. The issue here, Your Honor, is whether due process in fact applies to the facts and circumstances in this case, and if it does, whether this Court's decision in Stone v. FDIC, which relates to the issue of the consideration of a deciding official of ex parte communications, whether that applies. No, it's really whether the Supreme Court's decision in the Egan case, which says you can't review, we can't review, and the Board can't review the basis underlying revocation of security clearance. Judge, I have no, I do not contest that in any way in this proceeding. I agree that in that decision the Supreme Court held that no court, no administrative law judge, no court, not even this court, can look at the merits of the revocation or denial of a security clearance, and that is not what I propose to do here. My argument is that there were certain documents that were absolutely essential to our ability to respond to initially the denial or revocation of security clearance and secondarily the indefinite suspension and third, the removal that was relied on, expressly relied on by the agency, and we never got them. We requested them in discovery, and the agency's response was they don't exist. And they were very, very critical documents because the essential allegation here was that my client— It's clear that the documents weren't produced. Correct. It's clear that the government has said they weren't produced because we couldn't find them. I don't think we have any basis for assuming that the government's fibbing to us about that latter point. They couldn't find them, they couldn't find them. Your Honor, okay. But the contents or some of the contents of those documents that couldn't be found surely are known because in three quite lengthy responses to the agency, your client tried to explain that these episodes were misunderstood or they didn't happen, that it was either a prank to charge some drinks to somebody else or I was intoxicated when I did it but I really wasn't. And so there's a huge amount of factual allegations from the counsel for your client rebutting those charges. That is correct, Your Honor. So my question is what more would you have rebutted if you'd had the document because there's nothing in the document that's being alleged against you that you don't know about that you're responding to? Well, Judge, I'm not sure that that's true. I agree with a lot of what Your Honor said. There was a substantial amount of material provided to us. Yeah, I mean, I got a complete view from the three counsel submissions as to exactly why your client felt that this was trumped up, the stuff that happened at the training camp was just trumped up. Judge, we have no problem with the stuff that happened at the training center because we acknowledge that we were given all of those documents. There's no question about that. But the main issue, and I would suggest that the most serious allegation in the case was that he lacked candor in his 1994 and 1995 application to the Secret Service. He had applied to the Secret Service back in 1994 and 1995. He was rejected. And he then went with other federal law enforcement authorities and in 2002 again applied to the United States Secret Service. He was accepted on that occasion. One of the allegations that was made, and by far the most serious allegation, was that he had either misrepresented or lacked candor in his applications in 1994 and 1995. By far the most serious allegations made against him. When we received the material, I noticed that we didn't get any material on the 1994 and 1995 applications. The application was not there. The background investigation was not there. There were no interviews. And the polygraph was not there, which was very, very critical. I requested it, and the answer was, we don't have it. Now the problem is they may not have had it, but they relied on it because that notice of determination is filled with references to that application and that background investigation. As a matter of fact, 75%, I would say, of the serious allegations in there are from those applications. Can you point us to the document in the record wherein the security clearance is revoked so I know how much reliance is being put on the 1994 and 1995 stuff as opposed to the training? Judge, I think you have to look at what's referred to as the notice of determination. That's in 52. Yes, that's the notice of determination, Your Honor. That sets forth, yes, from 52 to 57. And in our brief, I basically quote all of the references that relate in any way to the 1994-1995 application. Your Honor, what I was trying to tease out of this is that there's a conclusion over on page 55 of the notice of determination. Your conduct as described above presents security problems, okay? Now, I'm trying to get at it in my own mind whether the agency would have determined that access to classified information should be denied based solely on what I've called the school episode as opposed to the earlier. Well, Judge, I think we know the answer to that because before they went the security clearance route, they tried to fire him for misconduct, the misconduct that Your Honor is referring to at the training facility. At that point, it was defended and a response was submitted to just that conduct at the training facility. That never got to the board level. It was rescinded. It was rescinded, and they decided to go the security clearance revocation route instead of the removal route. So I suggest, Your Honor, that... But can't the stuff at the training school involve the issue of whether one is being truthful? Well, Judge... Because he tells one story and then says, oh, no, I just made that up. And so one's ability to rely on the individual's statement of as being truthful or not seemed to me to be implicated by the training episode as well as by the earlier information. Well, I think the earlier information was far stronger. I mean, basically the only allegation that I saw that was in any way... They actually alleged that he engaged in criminal conduct at the training facility because he played a prank on a fellow student because he had had a few drinks and actually charged the bar tab to the hotel room of a fellow student. Could an agency decide that it wanted to deny a security clearance to a prankster? It could, and under the Egan case, it could probably deny a clearance for any reason at all. They didn't like the way he parted his hair. That would be sufficient under Egan because it's completely unreviewable anyway. Is that what you're getting to? I mean, at page 23 of your main brief, you say, had the agency commenced this long ordeal with proceeding to deny or revoke a fellow's security clearance, then arguably no harmful procedural error would have occurred. Now, that suggested to me, and what made me think of that is what you just said, because that suggests to me that if in fact they had, based on this incident that occurred at the training center in Maryland, if based on that they had proceeded to issue a notice of determination saying you're not going to get a security clearance, you wouldn't be here. I agree. I agree with that, Your Honor. But the point I was trying to make, that is in point two of my brief, the point I'm trying to make there is they're trying to do indirectly what they couldn't do directly. They tried to remove him. They realized that the stuff that happened at the training academy would never fly in front of an administrative law judge because it just wasn't very serious. It was basically a prank. To an MSPB judge, sir. Right. It would not have flown there, and they knew it. So they decided to go the security clearance route because it's basically unreviewable. And that's the second point of the brief. That is harmful procedural error because what they've effectively done here is they've stopped the removal proceeding in the middle. They've rescinded the removal, and they've tried to do it indirectly. What case do you have that says that that's not legitimate? Judge, I don't think there is a case because I don't think this is ever— This case. What? This case. This case is the only one that I know of, Your Honor, because I don't think this has ever been done before. In other words, the point I was trying to make, Your Honor, is if they had started this out with a security revocation proceeding, I would not have the argument that they're trying to do indirectly what they can't do directly. Well, but it's not hard to conjure up a real-world situation where an agency official learns of some alleged misconduct, prank, misconduct, and so dutifully says, well, we better do Title 75 and worry about the conduct. And all of a sudden, the agency is the fellow who's in charge of security clearances finds out about this prank and says, hey, we're going to pull the security clearance off pranksters, whether it was actual Title 75 conduct or not. I don't quite see, to me, why we should tell an agency they couldn't do that. No, I think they could do that, but they didn't do that. Well, we don't know. But, well, Your Honor, if you look at the actual decisions, now they're not very long decisions, they're very short decisions, but on the security clearance revocations, the decisions themselves, which are in the record, it's clear that the lack of candor issued from the prior application was more important to them than anything else. Now, there are just brief references to it, and they're very, very short. I don't think they wanted to tell a very long story. But there's a candor issue in the subsequent events as well. There is, but Your Honors have to ask yourselves, why did they rescind the removal proceeding if it was serious? And it wasn't serious. Well, you really did start out, I think, raising the only issue which is appropriate to raise, and that is, was there due process in connection with this? However, the due process aspect, insofar as it relates to the security revocation, is not insulated from all of the events that went before when they were proceeding with the revocation. He was given notice. They mentioned a lot of things in the initial notice, the complaint of the neighbor, other things. Then, when the basis for removal was converted to security revocation, an issue which indeed contains all sorts of problems. But since Egan, it has been the procedure which has been investigated. And this is why I'm having trouble finding how to focus on the absence of due process. Well, because of King v. Alston, Your Honor, a subsequent case that came out of this court. In that case, this court held that if you have a security revocation proceeding accompanied by a forced leave situation, like an indefinite suspension, due process does apply. And in this case, on the same day that he received the notice of determination that a security clearance was being removed, he also received a proposed indefinite suspension based on the revocation of security clearance. That, under King v. Alston, raises a due process issue. How much process is due? Let's assume, for purposes of argument, that it is absolutely true that the documents that dealt with the previous application, where there is a question of the marijuana use and that sort of thing, that those documents don't exist. Let's assume that the government was able to deliver a certificate saying they were destroyed by a fire. Right? Then, do you have a due process argument? Yes, because notwithstanding the fact that they don't exist, they relied on them. Because the notice of determination says they relied on them. But Egan says all you need is notice and an opportunity to respond. Minimal due process, the Supreme Court concluded. But King v. Alston says it has to be a meaningful opportunity to respond and understone it is not meaningful if they're relying on documents that they have and we don't have or they're relying on documents which we have. How much was not extant? The documents didn't exist. Did you make any attempt to find out who the people in the agency were, the individuals who had supposedly created the documents? Yes. Yes, I did. And were you able to find any of those names out? Judge, they... For the most part, the discovery I requested on this issue was denied, both by the agency and on a motion to compel. That's also part of the brief. However, they did identify... I asked them, if these documents don't exist, why are there documents in the file that refer to them? Obviously, somebody took notes from these documents. They identified who that person was. It was the proposing official who drafted the Notice of Determination. I tried to depose her. It was denied by the agency and rejected on a motion to compel by the administrative law judge. I tried to find out all about it, and I was barred. That's why I waived the hearing, because with only the due process issue and without any discovery on the issue, I wasn't going anywhere factually. All right. Thank you for your time. Ms. Conrad? Good morning. May it please the Court, the Secret Service provided Mr. Kavickia with all the procedural protections to which he was entitled under Egan and Drumheller and many other decisions, and they provided him with all the procedural protections of 5 U.S.C. 7513. His entitlement is the constitutional standard. That's clear. Perhaps a minimal, as the Court stated, constitutional standard. Correct. You're saying that that was met even though documents were withheld? It's one thing to say that the Court can't have it because the Court can't review it, but isn't that quite different from saying that the person who's affected by his own documents is also entitled to be deprived of them? Well, first of all, there's no requirement in 5 U.S.C. 7513 that the documents behind the Secret Service's decision actually be produced. It just requires a detailed statement that he can respond to, and I think in the Joint Appendix there's a very detailed statement to which Mr. Kavickia submitted a very detailed reply, both written and oral. It's the Secret Service internal regulations that require the Secret Service to produce the documents that it relied on for its notice of determination, which was its security clearance decision, and it did do so. Now, it produced a summary of those employment applications, which are what Mr. Kavickia disputes that he did not receive, and Mr. Kavickia does not believe that the agency relied on this summary in his notice of determination, but that goes to the sufficiency of the evidence of his security clearance determination, which is not reviewable by this Court or the MSPB. Well, the A.J. found that there was no... I mean, the A.J. did not find that the documents had been deliberately destroyed, as I recall. That's correct. The A.J. basically said, I accept the explanation that the government offered that it basically can't find them. That's correct. The administrative judge concluded that there was no evidence that what the agency said wasn't true, that they could not locate them. I don't think there's a presumption if documents are missing, innocently missing or lost. There's no presumption that they've been destroyed, but nor do I think that there's a presumption that their contents is adverse to the person that they affect. You're telling us that there is, and that must be accepted. I'm sorry, that there's an adverse consequence? I don't understand your question. Those documents were not produced. Right. They're referred to. They're relied on. This petitioner wants to raise a due process issue. You're saying, well, too bad. We can't find the documents. No, the documents, all the documents that were relied on were produced. The petitioner is saying, no, that's not possible. We don't believe that.  All documents that were relied on were produced. All documents that existed that you can find were produced. No, all documents that were relied on were produced. So his original application for employment where he was asked questions, have you ever used marijuana? The summary that's in the joint appendix, that's what was relied on, the summary of those applications. That's what was relied on. But that goes to the sufficiency of the evidence. His argument goes to the sufficiency of the evidence. So it's possible that the only thing in the record, his employment record was a summary, and the original documents were just gone for a long time. That's correct. They relied on the summary that was produced for Mr. Kavickia. And Mr. Kavickia now alleges, well, that's not possible. That's not sufficient evidence. That's not due process. But that really goes to that the agency didn't have enough evidence to revoke his security clearance determination, and that's not reviewable by the MSPB or this court. So it would be analogous to a situation where perhaps there was a memorandum that an agency had written at some point in time, and at a later point in time, that memorandum was digested, and the original memorandum is lost, and the agency relies on the digest, then your position is that that's full compliance with this full disclosure, because there's nothing else to supply. That's correct. But there's not... This is the document of 24 and 25 of the joint appendix. Is that correct, Ms. Turner? Yes, yes. The summary of employment applications. Is there any indication in the records to when that was prepared? I believe there was, yes, a statement, and I don't remember if it was in Mr. Kavickia's book that he brought it up, that he was told it was prepared in 1997, in 1998, and they also told him the person that had prepared the document. Of course, he contends that that's not possible. He doesn't believe that representation, but that all goes to the sufficiency of the evidence behind his security clearance determination. Well, not necessarily. He says it goes to the due process issue. How is he enabled to determine whether or not there's an issue there which can be developed if he doesn't have the information that was relied on? Well, he does have a detailed statement. It's not required that he get all the information that was relied on. This court held... It's required that he have enough to know whether or not he has a due process case. You can't say, we're not going to give that to you because you don't need it in order to make his case, and then say you haven't made your case. He doesn't know whether or not he could make it if he had the additional information. So I say that's different from whether or not the board can review the merits of the revocation. He wants the issues, the substantive issues, in order to know whether he got due process. Well, he's asking for more than that's required under the due process, but even if he wasn't, he still received everything. The agency still gave it everything that it relied upon in its notice of determination. And his argument that that is not sufficient goes to he's challenging the merits of the security clearance determination, which is non-reviewable. He's not challenging the merits. He makes that clear that he's raising only a due process issue. Well, but he... As this court found in Lyles, it's a due process claim, but it's only a disguise for a sufficiency of the evidence claim. It would be a similar situation as if this document, which is at page 2425, which is the digest of someone's assessment of these previous applications, if instead of it being a digest, it simply said, this is based on a statement made to the agency by an unidentified informant. An unidentified informant said that on such-and-such a day, Mr. Cocklay said this, but he said this, he said this, but he said this. So long, in your view, so long as the agency doesn't have to disclose to the unidentified informant. Well, that all... Right. That all is the evidence for his security clearance determination. That is what the security clearance determination is based on. There's nothing that says the agency has to rely on certain things over others in the security clearance determination. It goes to what the evidence that composed his security clearance determination, whether that was sufficient. And there's also no statute or regulation that requires an agency to remove an employee based upon misconduct rather than a security clearance determination. As the Supreme Court in Egan noted, a security clearance determination is a discretionary judgment call that is committed by law to the appropriate executive branch agency having the necessary expertise to protect classified information. Furthermore, the Secret Service has internal procedures that regulate its denial of security clearance and the review and the appeals procedure all the way up to Security Appeals Board and also who composes that board and what they make their determination on. Do we have any way of knowing how much weight the agency placed on the document at page 2425 to remove the security clearance as opposed to the alleged prank episodes at the training center? No, not besides what's reflected in the Notice of Determination. Where both are reflected. Right, where both. There's actually several. That's only 1994-1995 applications is only one small part of the decision to revoke the security clearance. Okay, thank you. Thank you very much. Mr. Roth, you have the last word. Yeah, thank you. Your Honor, in Mr. Yao's this is a JA, the Joint Appendix of 99, in his decision he indicated that in part his decision was made on the lack of candor as reflected in the discrepancies in his security forms. That's a JA-99 and that's basically the man who made the decision on the security. Which says your continued irresponsible behavior. Right. And then he goes on to say and your lack of candor. And then the Security Appeals Board JA-142 also mentions specifically the inconsistent information and omitted information on the security forms. So, it was taken into consideration and it's explicitly mentioned in all of the relevant documents. The reason... The whole business about the student stuff is also on page 142. Judge, it's all there and I think it's impossible to determine number one how much weight was given to each one and also I think it's impossible to determine whether without the lack of candor the alleged lack of candor in the prior application whether there would have even been a revocation. And that's an important issue I think. Okay. I think we have... Okay. Thank you very much. Thank you.